FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 20, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JENNY B.,<br><br>               Plaintiff,<br><br>   v.<br><br>KILOLO KIJAKAZI,<br>COMMISSIONER OF SOCIAL<br>SECURITY,[1]<br><br>              Defendant. | NO:  1:20-CV-3070-FVS<br><br>ORDER GRANTING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND DENYING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross motions for summary judgment. ECF Nos. 11 and 12. This matter was submitted for consideration without oral argument. The Plaintiff is represented by Attorney D. James Tree.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

The Defendant is represented by Special Assistant United States Attorney Leisa A. Wolf.  The Court has reviewed the administrative record, the parties' completed briefing, and is fully informed.  For the reasons discussed below, the Court **GRANTS** Plaintiff's Motion for Summary Judgment, ECF No. 11, and **DENIES** Defendant's Motion for Summary Judgment, ECF No. 12.

### JURISDICTION

Plaintiff Jenny B.[2] filed for disability insurance benefits on August 29, 2013, alleging an onset date of August 13, 2012; and she filed for supplemental security income on August 25, 2014, also alleging an onset date of August 13, 2012.  Tr. 180-203.  Benefits were denied initially, Tr. 124-26, and upon reconsideration, Tr. 130-34.  Plaintiff appeared at a hearing before an administrative law judge ("ALJ") on November 19, 2015.  Tr. 34-84.  Plaintiff was represented by counsel and testified at the hearing.  *Id*.  The ALJ denied benefits, Tr. 10-33, and the Appeals Council denied review.  Tr. 1.  On July 26, 2018, the United States District Court for the Eastern District of Washington granted Plaintiff's Motion for Summary Judgment, and remanded the case for further proceedings.  Tr. 807-29.  On September 1, 2018, the Appeals Council vacated the ALJ's finding, and remanded

---

[2] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2

for further administrative proceedings.  Tr. 834-36.  On December 16, 2019,

Plaintiff appeared for an additional hearing before the ALJ.  Tr. 739-76.  The ALJ

denied benefits.  Tr. 709-38.  The matter is now before this court pursuant to 42

U.S.C. §§ 405(g); 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and

transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner.

Only the most pertinent facts are summarized here.

Plaintiff was 37 years old at the time of the hearing.  *See* Tr. 215.  She

graduated from high school and completed some college courses.  Tr. 39-41.  At

the second hearing, she reported living with her seven-year-old son and his father.

Tr. 749.  Plaintiff has work history as a circulation clerk, buyer assistant,

administrative assistant, customer complaint clerk, stock clerk, cashier, and pizza

baker.  Tr. 42-43, 79.  At the first hearing, Plaintiff testified that she did not go

back to work after she had her younger child because she had a "complicated

delivery" and postpartum depression.  Tr. 50-51.  At the second hearing, Plaintiff

reported that she missed work at her part-time job due to vestibular migraines,

panic attacks, and depression.  Tr. 751-52.

At the first hearing, Plaintiff testified that she has back pain; her carpal

tunnel causes numbness and pain during the day; she has depression and she cries

every day; her anxiety causes her to feel dizzy, agitated, and unable to concentrate;

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3

she avoids being around people and stays home for "days at a time"; and she picks

her skin as a "stress reliever." Tr. 52-54, 66, 75-77. At the second hearing, she

reported "new" symptoms of swelling in her legs, and vestibular migraines that

caused dizziness and vertigo. Tr. 752-53. She reported that she could not do a "sit

down job" due to worsening carpal tunnel syndrome, and vestibular migraines that

cause her to miss work due to vertigo and dizziness. Tr. 756. Plaintiff testified the

vestibular migraines cause pain, dizziness, spinning sensation, light and sound

sensitivity, and nausea that lasts for days at a time. Tr. 769-70.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

(quotation and citation omitted). Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

citation omitted). In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation. *Id.*

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*.  An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not consistently engaged in substantial gainful activity since August 13, 2012, the alleged onset date.  Tr. 715. At step two, the ALJ found that Plaintiff has the following severe impairments: major depressive disorder, chronic, moderate to severe, without psychotic features; generalized anxiety disorder with panic attacks; obsessive compulsive disorder; post-traumatic stress disorder; borderline personality disorder; sprain/strain of lumbar spine with low back pain; bilateral sacroiliac joint dysfunction; disorder of sacrum; greater trochanteric bursitis and bilateral genu valgum; obesity; right knee derangement; and mild bilateral carpal tunnel syndrome.  Tr. 715.  At step three,

the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 716.  The ALJ then found that Plaintiff has the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with some exceptions.  The claimant can never climb ladders, ropes, or scaffolds, work at unprotected heights or in proximity to hazards such as heavy machinery with dangerous moving parts.  She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, and can frequently handle and finger.  The claimant can understand, remember, and carry out simple, routine tasks and follow short, simple instructions, can perform work that requires little or no judgment, and can perform simple duties that can be learned on the job in a short period.  The claimant can cope with occasional work setting change and occasional, routine interaction with supervisors, can work in proximity to coworkers, but not in a team or cooperative effort, and can perform work that does not require interaction with the general public as an essential element of the job, but occasional incidental contact with the general public is not precluded.

Tr. 718.  At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.  Tr. 728.  At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including document preparer, final assembler, and circuit board touch up screener.  Tr. 729.  On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from August 13, 2012, through the date of the decision.  Tr. 730.

/ / /

/ / /

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9

ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act and supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 11.  Plaintiff raises the following issues for this Court's review:

1.  Whether the ALJ properly considered Plaintiff's symptom claims;

2.  Whether the ALJ erred at step two; and

3.  Whether the ALJ properly considered the medical opinion evidence.

DISCUSSION

**A. Plaintiff's Symptom Claims**

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

citations and quotations omitted). "General findings are insufficient; rather, the

ALJ must identify what testimony is not credible and what evidence undermines

the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th

Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ

must make a credibility determination with findings sufficiently specific to permit

the court to conclude that the ALJ did not arbitrarily discredit claimant's

testimony."). "The clear and convincing [evidence] standard is the most

demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995,

1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920,

924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could

reasonably be expected to cause some of the alleged symptoms; however, the ALJ

found that Plaintiff's "statements concerning the intensity, persistence and limiting

effects of these symptoms are not entirely consistent with the medical evidence and

other evidence in the record" for several reasons. Tr. 720.

### 1. *Inconsistencies*

As an initial matter, the ALJ generally notes that the "treatment record

demonstrates statements, reports, and complaints from [Plaintiff] that are

inconsistent with her allegations." Tr. 720. In evaluating symptom claims, the

1  ALJ may consider inconsistencies in Plaintiff's testimony or between her testimony

2  and her conduct.  *Thomas,* 278 F.3d at 958–59; *see also Smolen v. Chater,* 80 F.3d

3  1273, 1284 (9th Cir.1996) (ALJ may consider prior inconsistent statements).  In

4  purported support of this finding, the ALJ cites "inconsistencies" between

5  Plaintiff's allegations regarding dizziness, headaches, and side effects.  Tr. 720-22.

6  First, the ALJ noted that at the December 2019 hearing Plaintiff testified that she

7  "experiences extreme vertigo and migraine headaches, and specifically said she has

8  a spinning sensation 'almost like when you're drunk' that does not go away for

9  days.  [Plaintiff] also alleged recurring experiences of dizziness, in the context of

10  experiencing anxiety at other times.  However, treatment records indicate the

11  [Plaintiff] inconsistently reported her experiences of dizziness throughout the

12  relevant period, and do not support the degree of limitation she has alleged."  Tr.

13  720.  Plaintiff argues the ALJ "misstates the record and neglected to show an

14  inconsistency with [Plaintiff's] testimony."  ECF No. 11 at 5.  The Court agrees.

15      As noted by the ALJ, Plaintiff briefly testified at the first hearing that she

16  experiences dizziness as part of her anxiety condition. Tr. 881-82.  However, at the

17  second hearing, Plaintiff testified that she was forced to quit her part-time job in

18  November 2019 "due to worsening vertigo and migraine headaches, and

19  specifically she has a spinning sensation 'almost like when you're drunk' that does

20  not go away for days." Tr. 720, 769.  The ALJ found this testimony was

21  inconsistent with Plaintiff's treatment record from her initial claim that included

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

both reports of dizziness and subsequent denials of dizziness at other points in the

record.  Tr. 720 (citing Tr. 552, 564-66, 589, 683, 685, 1168-75).  However, as

noted by Plaintiff, "[p]rior to the onset of vestibular migraines, her dizziness was

primarily linked with or noted as a symptom of anxiety."  ECF No. 11 at 5; Tr.

386, 437 (dizziness increased after "coming off" mental health medications during

pregnancy), 444-45, 477 (reporting worsened depression and anxiety, and

"frequently dizzy"), 508, 514, 1013, 1100, 1145 (mental health complaint linked to

vertigo), 1386.  Plaintiff also cited instances, acknowledged by the ALJ in the

decision, where Plaintiff complained of dizziness subsequent to running out of

mental health medication, or was prescribed mental health medication in order to

alleviate anxiety-related dizziness.  ECF No. 11 at 6; Tr. 462 ("dizziness resolved

when Xanax was started"), 1357 (advised her dizziness was due in part to anxiety,

and reported her symptoms returned after she ran out of medication).  Thus, the

Court fails to discern how the ALJ's recitation of evidence from Plaintiff's initial

application, which includes reduced anxiety complaints when Plaintiff is taking

anxiety medication, is inconsistent with Plaintiff's testimony from the first hearing.

Further, the ALJ relied on Plaintiff's report to an examining provider in

March 2014 that she was dizzy "all the time," as inconsistent with previous denials

of dizziness, which the ALJ additionally found was suggestive of symptom

exaggeration "[g]iven the evaluation by Dr. Dougherty was directly tied to the

receipt of disability benefits."  Tr. 720.  However, as noted by Plaintiff, a plain

1    reading of the portion of Dr. Dougherty's findings cited by the ALJ indicates that

2    Plaintiff was specifically describing the symptoms she experienced when she was

3    anxious, including shaking, heart racing, chest pains, difficulty breathing, nausea,

4    and dizziness.  ECF No. 11 at 5-6 ("That she was dizzy 'all the time' *when* she had

5    anxiety is not an inconsistency"); Tr. 508. Moreover, Dr. Dougherty explicitly

6    noted that Plaintiff experienced "chronic dizziness, which [he believed] may be

7    related to underlying psychological factors." Tr. 514. Again, the Court is unable to

8    find a discrepancy between the evidence cited by the ALJ, and Plaintiff's

9    testimony that she experienced dizziness as a symptom of her anxiety.

10        At her second hearing in 2019, Plaintiff testified that she started taking time

11    off of her part-time job in November 2018 because she was experiencing vertigo

12    and migraines.  Tr. 750-51 (reporting that the primary cause of her absenteeism

13    from her job was "dizziness and vertigo that's associated with" vestibular

14    migraines").  The ALJ concluded that Plaintiff's reports to Dr. Pommer in 2018

15    and 2019 that she was experiencing dizziness were "not consistent" with Plaintiff's

16    "allegations or her statements to Dr. Dougherty" back in 2014.  Tr. 721 (citing Tr.

17    1248 (reporting she has dizziness "much of the time" in 2019, and provider

18    "suspected vestibular migraines"), Tr. 1253 (reporting in 2019 that "dizziness is

19    really bad now"), Tr. 1255 (reporting dizziness and "room is spinning" in 2018,

20    and noting "had symptoms like this in the distant past").  However, the ALJ failed

21    to consider Plaintiff's own testimony that her "vertigo, dizziness and the

migraines" was not part of her "original case," and she has "gotten sicker and there's become more things wrong over the last couple of years and the migraines is the biggest one [she is] dealing with [at the second hearing]." Tr. 754. Moreover, the ALJ acknowledged in the decision that Plaintiff reported dizziness to Dr. Pommer in December 2018, and that she indicated she "had not experienced any such symptoms for a significant amount of time," and that in October 2019 Plaintiff reported she had dizziness "much of the time" and that a good day was "dizzy but functional." Tr. 721. As noted by Plaintiff, "this matches testimony that she significantly declined in the year prior to the December 2019 hearing with dizziness and migraines." ECF No. 11 at 6 (citing Tr. 1248, 1255, 1284, 1296, 1478-79, 1481, 1492, 1496, 1500). Based on the foregoing, the Court finds the ALJ's rejection of Plaintiff's symptom claims because she inconsistently reported dizziness is not supported by substantial evidence from the entire adjudicatory period.[3]

---

[3] The ALJ additionally found that records from Plaintiff's opiate addiction treatment center were "inconsistent with [Plaintiff's] allegations and testimony" because she reported she was doing "very well" in July 2019, and she reported that over the counter medication improved her dizziness for a period of time. Tr. 721 (citing Tr. 1474-77, 1483). However, as noted by Plaintiff, the records cited by the ALJ specifically refer to Plaintiff "doing very well in long-term recovery" from her

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15

1    Second, the ALJ found the "record also demonstrates reports of headaches

2  during the relevant period that are inconsistent with [Plaintiff's] allegations." Tr.

3  721.  In support of this finding, the ALJ generally noted that headaches "appear as

4  part of the Past Medical History throughout the medical records, but there are few

5  actual complaints of headaches or migraines in the context of [Plaintiff] seeking

6  treatment."  Tr. 721.  Specifically, the ALJ cites "inconsistent" complaints of

7  headaches across the medical record, including: (1) Plaintiff's report in February

8  2014 that she was having daily headaches, followed by a "lack of complaint" of

9  ongoing headaches the following month; (2) Plaintiff reports that she had "some

10  version of a headache daily, and five to ten severe headaches every month" in

11  November 2019, but treatment notes from 2016 to 2019 do not document

12  complaints of headaches; and (3) "[a]lthough headaches appear consistently, as

13  part of the 'medical history,' [Plaintiff] did not complain of any headaches or

14  migraines until October 2019, when she described migraines and "head pressure,"

15  and was referred to see a neurologist."  Tr. 722 (citing Tr. 520, 523, 1246-49,

16

17  ───────────────

18  opioid addiction, and the same records cited by the ALJ also include ongoing

   reports of dizziness and vertigo, for which Plaintiff was referred to a neurologist.

19  ECF No. 11 at 7 (citing Tr. 1474-79, 1481, 1492).  Based on the foregoing, this

20  evidence does not rise to the level of substantial evidence to support the ALJ's

21  rejection of Plaintiff's symptom claims due to inconsistent reporting of dizziness.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16

1500).  However, as noted by Plaintiff, and discussed in detail above with regard to

her complaints of dizziness, the ALJ fails to consider Plaintiff's acknowledgement

at the 2019 hearing that headaches were "not an issue when she initially filed" for

benefits in her prior application; instead, "she noted she had a few migraines near

the end of 2017 and had had regular headaches prior to that, but it was only

recently, after 2017 and her gas station work, that migraines became a primary

concern."  ECF No. 11 at 7-8 (citing Tr. 754, 758, 770-71)  Moreover, while not

cited in the ALJ decision, the record does include complaints of headache pain in

2018 and 2019, as well as complaints of dizziness and vertigo which Plaintiff

describes as the primary symptoms of vestibular migraines.  ECF No. 11 at 8-9

(citing Tr. 1247-48 (chronic daily headaches prompting neurology referral), 1255

(bad headache along with dizziness), 1284-85 (sought emergency treatment for

headache), 1291, 1500).  For all of these reasons, the Court finds the ALJ's

rejection of Plaintiff's symptom claims based on "inconsistency" between Dr.

Pommer's records and Plaintiff's statements regarding the "frequency of

headaches" is not supported by substantial evidence in the overall record.

Finally, the ALJ noted that Plaintiff alleged "serious" side effects from her

medications, including drowsiness, fogginess, difficulty with short-term memory,

concentration issues, and increased anxiety.  Tr. 722 (citing Tr. 250, 877-78).

"However, when meeting with treating providers [Plaintiff] routinely denied

having any side effects, and in particular when meeting with the provider

prescribing her narcotic medications." Tr. 722 (citing Tr. 563, 589, 592, 686, 1168, 1172, 1174, 1176). However, in keeping with her denial of side effects at these treatment visits, Plaintiff testified in 2015 that she had not discontinued any medications due to "bad" side effects in the last couple of years; rather, she "dealt with" the "normal" side effects of drowsiness, fogginess, and difficulty with short term memory because the benefits of the medication outweigh the "normal" side effects. Tr. 876-78.  Moreover, the second medical record cited by the ALJ specifically asked her to list the side effects of her medications on her function report, without distinction as to their relative severity. *See* Tr. 250.  Therefore, to the extent the ALJ's reference to Plaintiff's denial of side effects at certain points in the record is intended as a reason to discount her symptom claims, the Court finds it is not supported by substantial evidence.

Based on the foregoing, the Court finds the ALJ's reliance on "inconsistent" reports of dizziness, headaches, and side effects, is not a clear and convincing reason, supported by substantial evidence, to reject her symptom claims.

### 2.  Lack of Objective Medical Evidence

Second, the ALJ found the "minimal and mild physical examination findings found throughout the record are inconsistent with [Plaintiff's] allegations of extremely limiting physical conditions." Tr. 722.  The medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); 20 C.F.R. §

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 18

404.1529(c)(2).  In support of this finding, the ALJ cited evidence of normal

physical examination findings; moderate to mild carpal tunnel in 2014 nerve

conduction testing with "little to no mention" of carpal tunnel symptoms in

"subsequent records"; "few observations of swelling or edema throughout the

relevant period"; observations by medical providers that Plaintiff "routinely

appeared in no acute distress and/or was noted to appear 'well'" during the relevant

adjudicatory period; and the record contained only "rare" documentation of

"psychiatric or cognitive difficulties" by mental health providers.  Tr. 722-25

(citing, e.g., Tr. 383, 464, 486, 497, 535, 548-49, 552, 560, 563, 590, 593, 621,

667, 673, 682-86, 1038, 1062, 1068, 1121, 1146, 1156, 1168, 1285, 1383, 1497,

1501).

Plaintiff argues this finding was in error, and cites evidence of Plaintiff's

ongoing carpal tunnel symptoms of hand numbness and pain, positive Phalen's,

positive reverse Phalen's bilaterally, and positive Tinel's; observations of edema in

2019; and psychiatric observations that Plaintiff was anxious, depressed, tearful

and crying, sad, labile, had impaired eye contact, had restricted/blunt/constructed

affect, had rapid and pressured speech, had suicidal ideation, and cut and picked at

her own skin.  ECF No. 11 at 10-13 (citing Tr. 386, 464, 511-12, 535, 600, 605,

674, 1013-15, 1062, 1065, 1082, 1194, 1258-59, 1320-21, 1342, 1350, 1383, 1387,

1392, 1399, 1403, 1496). Plaintiff also noted that the ALJ's finding regarding

Plaintiff's complaints of edema was misplaced, because Plaintiff testified that the

swelling only began in March 2019, and "[i]t would therefore not be expected that edema would be found throughout the relevant period." ECF No. 11 at 9. However, regardless of whether the ALJ erred in finding Plaintiff's symptom claims were not corroborated by objective testing and examinations, it is well-settled in the Ninth Circuit that an ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins*, 261 F.3d at 857; *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). As discussed in detail above, the one additional reason given by the ALJ for discounting Plaintiff's symptom claims was legally insufficient. Thus, because lack of corroboration by objective evidence cannot stand alone as a basis for a rejecting Plaintiff's symptom claims, the ALJ's finding is inadequate.

The Court concludes that the ALJ did not provide clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims.[4] On remand, the ALJ must reconsider Plaintiff's symptom claims

---

[4] Defendant argues that the ALJ "reasonably concluded that Plaintiff may have overstated her difficulties," because Plaintiff was able to work during the relevant period. ECF No. 12 at 14. However, as indicated by Plaintiff, "the ALJ noted her part-time work only in repeating [Plaintiff's] testimony." ECF No. 13 at 3-4. The Court is not permitted to consider reasoning that was not offered by the ALJ in the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 20

**B. Additional Assignments of Error**

Plaintiff additionally argues that the ALJ erred at step two by failing to consider Plaintiff's vestibular migraines and edema.  ECF No. 11 at 14. Specifically, the ALJ "made no mention of the disorders as [medically determinable impairments at step two], did not assess them as severe, and only discussed them in the context of discounting [Plaintiff's symptom claims]."  ECF No. 11 at 14 (citing Tr. 720-24).  Defendant contends that the ALJ properly considered "other physical conditions from the relevant period that were no more than transient and did not last for a continuous period of twelve months, or did not cause significant limitations in functioning."  ECF No. 12 at 11 (citing Tr. 716). However, in light of the need to reconsider Plaintiff's symptom claims, as discussed extensively above, the ALJ should reevaluate Plaintiff's claimed impairments of edema and vestibular migraines at step two on remand.

Finally, Plaintiff argues that the ALJ improperly rejected the medical opinions of treating provider David Pommer, M.D., examining psychologist Roland Dougherty, Ph.D., and treating provider Celeste Wendler, M.S.  ECF No.

---

decision.  *See Bray*, 554 F.3d at 1226 (the Court "review[s] the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 21

11 at 16-20.  Because the analysis of these opinions is dependent on the ALJ's evaluation of Plaintiff's symptom claims and the step two evaluation, particularly with regard to Plaintiff's claims of dizziness and migraine headaches, which the ALJ is instructed to reconsider on remand, the Court declines to address these challenges here.  On remand, the ALJ is instructed to reconsider Plaintiff's symptom claims, reweigh the medical opinion evidence of record, and conduct a new sequential analysis.

## REMEDY

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome[.]" *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison*, 759 F.3d at 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met).  This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401.  But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly

1    evaluated, remand is appropriate.  *See Benecke v. Barnhart*, 379 F.3d 587, 595-96

2    (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

3        The Court finds that further administrative proceedings are appropriate.  *See*

4    *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014)

5    (remand for benefits is not appropriate when further administrative proceedings

6    would serve a useful purpose).  Here, the ALJ improperly considered Plaintiff's

7    symptom claims, which calls into question whether the assessed RFC, and resulting

8    hypothetical propounded to the vocational expert, are supported by substantial

9    evidence.  "Where," as here, "there is conflicting evidence, and not all essential

10   factual issues have been resolved, a remand for an award of benefits is

11   inappropriate."  *Treichler*, 775 F.3d at 1101.  Instead, the Court remands this case

12   for further proceedings.  On remand, the ALJ must reconsider Plaintiff's symptom

13   claims and the findings at step two.  In addition, the ALJ must reconsider the

14   medical opinion evidence, and provide legally sufficient reasons for evaluating the

15   opinions, supported by substantial evidence.  If necessary, the ALJ should order

16   additional consultative examinations and, if appropriate, take additional testimony

17   from a medical expert.  Finally, the ALJ should reconsider the remaining steps in the

18   sequential analysis, reassess Plaintiff's RFC and, if necessary, take additional

19   testimony from a vocational expert which includes all of the limitations credited by

20   the ALJ.

21

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 23

Accordingly**, IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **GRANTED**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

2. Defendant's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

3. Application for attorney fees may be filed by separate motion.

The District Court Clerk is directed to enter this Order and provide copies to counsel.  Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**DATED** August 20, 2021.

_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
United States District Judge

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 24